Filed: 9/29/2021 11:51 AM
Susan Anderson
District Clerk,
Marion County, Texas

B. J. Westbrook

**CAUSE NO. 2000094**

| | | |
|---|---|---|
| **JASON CARROLL** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **CITY OF JEFFERSON,** | § | |
| **VICTOR PEROT, individually and in** | § | |
| **official capacity JIM FINSTROM,** | § | |
| **individually and in official capacity,** | § | |
| **TYRANI BRADDOCK** | § | |
| **individually and in official capacity,** | § | |
| **DAVID WESTBROOK, individually** | § | |
| **and in official capacity, ROBERT BAKER** | § | |
| **individually, SARAH MCKINNON,** | § | |
| **individually and in official capacity,** | § | |
| **MICHAEL MARTIN individually,** | § | |
| **MICHAEL D MARTIN LAW OFFICE,** | § | |
| *Defendants.* | § | **MARION COUNTY, TEXAS** |

## PLAINTIFF'S FOURTH AMENDED PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES JASON CARROLL, (hereinafter referred to as "Plaintiff"), and files with this Court, "Plaintiff's Fourth Amended Petition" against the City of Jefferson, Victor Perot individually and in his official capacity, Jim Finstrom individually and in his official capacity, Tyrani Braddock individually and in her official capacity, David Westbrook individually and in his official capacity, Robert Baker individually, Sarah McKinnon individually and in her official capacity, Michael Martin individually, and Michael D Martin Law Office (hereinafter referred to as "Defendants") and would respectfully show to this Honorable Court the following:

## I. DISCOVERY CONTROL PLAN

Plaintiff intends that discovery be conducted under Discovery Level 2 of the Texas Rules of Civil Procedure. Plaintiff reserves the right to amend.

## II. PARTIES AND SERVICE

PLAINTIFF'S FOURTH AMENDED PETITION

1

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

Plaintiff, Jason Carroll brings this action individually and as an interested person as defined by the Texas Open Meetings Act § 551.142.   Plaintiff resides in Marion County, Texas. The Plaintiff was employed as a Police Officer with the rank of Chief of Police with the Jefferson City Police Department.

Defendant, City of Jefferson, Texas, is a political subdivision and will be served by delivering a copy of this Petition to opposing counsel, Mike Starr via E-File.

Defendant, Victor Perot is an individual being sued in his official capacity as City Council member and in his individual capacity. This Defendant may be served with process at Defendant's place of residence located at 403 W LAFAYETTE JEFFERSON, TX 75657 or wherever Defendant may be found.  For private pick-up, Dakota Process Service: (903) 472-9319.

Defendant, Jim Finstrom is an individual being sued in his official capacity as City Council member and in his individual capacity.  This Defendant may be served with process at Defendant's place of residence located at 1003 S LINE JEFFERSON, TX 75657 or wherever Defendant may be found. For private pick-up, Dakota Process Service: (903) 472-9319.

Defendant, Tyrani Braddock is an individual being sued in her official capacity as City Council member and in her individual capacity.  This Defendant may be served with process at Defendant's place of residence located at 1505 TITUS STREET JEFFERSON, TX 75657, or wherever Defendant may be found.  For private pick-up, Dakota Process Service: (903) 472-9319.

Defendant, David Westbrook is an individual being sued in his official capacity as City Council member and in his individual capacity.  This Defendant may be served with process at Defendant's place of residence located at 908 S MAIN JEFFERSON, TX 75657 or wherever Defendant may be found.  For private pick-up, Dakota Process Service: (903) 472-9319.

Defendant, Sarah K. McKinnon is an individual being sued in her official capacity as City Council member and in her individual capacity.  This Defendant may be served with process at

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

Defendant's place of residence located at 109 W HENDERSON JEFFERSON, TX 75657 or wherever Defendant may be found. For private pick-up, Dakota Process Service: (903) 472-9319.

Defendant, Robert Baker is an individual being sued in his official capacity as City Mayor and in his individual capacity. This Defendant may be served with process at Defendant's place of residence located at 40 W WALNUT ST JEFFERSON, TX 75657 or wherever Defendant may be found. For private pick-up, Dakota Process Service: (903) 472-9319.

Defendant, Michael D. Martin is an individual. This Defendant may be served with process at Defendant's place of employment located at 105 SIMPSON ST GILMER, TX 75644 or wherever Defendant may be found. For private pick-up, Dakota Process Service: (903) 472-9319.

Defendant, Michael D Martin Law Office is a domestic business duly licensed to do business in the State of Texas and doing business in the State of Texas for the purpose of accumulating monetary profit. This Defendant may be served with process by serving the principal, Michael D. Martin at Defendant's headquarters located at 105 SIMPSON ST GILMER, TX 75644. For private pick-up, Dakota Process Service: (903) 472-9319.

## III. JURISDICTION, VENUE, AND JURY DEMAND

The Court has jurisdiction over the Defendants because the events giving rise to this suit occurred in Marion County, Texas. The subject matter in controversy is within the jurisdictional limits of this court. This court has jurisdiction over the parties because Plaintiff is a Texas resident.

Venue in Marion County is proper in this cause under Section 15.002(a) (3) of the Texas Civil Practice and Remedies Code because this county is the county that the City lies in situ.

This Court has jurisdiction over the parties and subject matter in this cause of action in that, this case is a proceeding in law and equity and wherein at least one of the Defendants is a resident of Marion County, Texas.

PLAINTIFF'S FOURTH AMENDED PETITION

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

3

As for any declarations or declaratory judgments that may be necessary in this cause, this Court has such jurisdiction over the parties and the subject matter pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. Plaintiff affirmatively pleads that Marion County Texas is the county in which all or a part of this cause of action accrued. Therefore, pursuant to V.T.C.A., Civil Practice and Remedies Code, Section 15.001 et seq, venue for this cause of action is proper in Marion County, Texas.

Plaintiff demands a jury trial and will tender the requisite fee.

## V. FACTS OF THE CASE

Plaintiff, Jason Carroll (herein referred to as Plaintiff) was a professional law enforcement officer, employed as a public employee by the City of Jefferson, Texas to serve as Chief of Police.

Beginning on or around 2005 the Plaintiff served the citizens of Jefferson as an officer of the law with the Jefferson Police Department until June 22, 2020.

On or around December 19, 2019, in a 4-1 decision, Jefferson City Council voted to make the Plaintiff their interim Police Chief. City Council member Tyrani Braddock was the sole voice of dissent to Plaintiff becoming interim Police Chief.

Defendant Braddock stated during the December 19, 2019 City Council meeting, "I have some concerns," Jefferson city alderwoman Tyrani Braddock said. "So out of all the others that we have in the police department, this was our final decision of who is going to take Amburn's place, even though it's just for now? It has to be this person, you can't recommend other people? I just have concerns and just feel like there might be other people that could take the position and it's just temporary as well." [1]

---

[1] Ortigo, B. (2019, December 19). Jefferson City Council Appoints Interim Police Chief. *Marshall News Messenger*.

PLAINTIFF'S FOURTH AMENDED PETITION                                                                          4

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

On or around March 3, 2020, in a 4-1 decision, Jefferson City Council voted to make the Plaintiff their Police Chief. Again, City Council member Tyrani Braddock was the sole voice of dissent to the Plaintiff becoming Police Chief.

On March 3, 2020 Jefferson City Council consisted of Tyrani Braddock, Sarah McKinnon, Victor Perot, David Westbrook, and James "Jim" Finstrom. While the acting city attorney for Jefferson at the time was Michael Martin.

Plaintiff even before being voted to serve as Chief of Police had made regular public political postings on his private Facebook account for many years while in service as a City of Jefferson police officer. The Plaintiff's posts before becoming Police Chief were political satire in nature and leaned towards what could be described as conservative views.

On or around, June 8, 2020, Jason Carroll, while off-duty from work shared a political post depicting a pacifier on top of a monument pedestal with the hashtag "snowflake" embedded as a search to the political image.

A TRUE COPY
ATTEST:
Susan Anderson

DISTRICT CLERK











The Plaintiff's political posts garnered no attention by any citizen for nearly two-weeks. For almost two-weeks no one commented that the Plaintiff's political posts should be deleted, no reports were made to the Jefferson Police Department, no reports were made to Police dispatch, and no reports were made to any City of Jefferson employee let alone submitted to the City Hall of Jefferson. **Exhibit 2**.

Only after City Council member Tyrani Braddock saw the Plaintiff's post on or around June 17, 2020 did complaints surface in opposition to Plaintiff's Facebook post, but only after Tyrani Braddock had solicited such complaints to be directed against Jason Carroll and submitted to City Hall.

PLAINTIFF'S FOURTH AMENDED PETITION

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

7

After seeing the Plaintiff's political Facebook posts, City Council member Tyrani Braddock then communicated with Victor Perot and other unidentified City Council members that she would like to call for an Emergency Meeting to discuss Jason Carroll's Facebook posts and assign punishment.

On or around June 16, 2020, Tyrani Braddock "walked out the door [after a City Council meeting] and started making calls for a meeting but not regarding July 4th." Based on information and belief Tyrani Braddock's cellular telephone calls were communications made to individual City Council members concerning an issue within the jurisdiction of the governmental body on issues of personnel matter where a quorum was present through the Council Member's series of communications.

On or around June 17, 2020, Tyrani Braddock called Victor Perot via cellular telephone and communicated that she wanted an Emergency Session called. The communication was more than a request for a meeting since it involved the discussion of a personnel matter and the consideration of punishment. Thus, based on information and belief the communication concerned an issue within the jurisdiction of the governmental body. After Tyrani Braddock voiced her requests on the issue of the Plaintiff's Facebook posts, Victor Perot replied that an Emergency Meeting was not justified.

### Victor Perot Deposition Excerpt

```
10    Q   She says, "I did my homework, tried to find
11  out as much as possible regarding how to approach the
12  situation legally."
13          What was the situation she was referring
14  to?
15    A   Trying to have a -- trying to have a public
16  meeting, an emergency public meeting.
17    Q   Did she talk to you about -- about how to
18  have a meeting?
19    A   She did.
20    Q   Did she call you on the phone?
21    A   Yes, she did.
22    Q   Did she text you?
23    A   No. We spoke on the phone.
24    Q   Okay.
```

PLAINTIFF'S FOURTH AMENDED PETITION

8



A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

Perot Dep. 76:10-24.

In response to the multiple telephone calls by Tyranni Braddock discussing Jason Carroll on June 17, 2020, Tyrani Braddock then made a Facebook post to solicit complaints against Jason Carroll and outlined that her request for an Emergency Meeting would not be fulfilled, as it may be unlawful.

City Council member Tyrani Braddock, a government official took the individual action of retaliating against the Plaintiff through soliciting complaints from citizens against the Plaintiff, on the basis of his political Facebook posts, proximately causing the Plaintiff's injury.



On around June 18, 2021, multiple council members were now beginning to treat the Plaintiff drastically differently from other members of the general public and other employees of

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

the City in response to his political posts directed for satire, humor, and political ideology. The City of Jefferson and all departments attached to the City did not document any level of "interference" or "disruption" to the efficacy of the institution or individual employees *until* council member Tyrani Braddock requested and solicited complaints from citizens, inter alia, her Facebook friends and close companions. **Exhibit 2**.

Between June 16, 2020 and June 22, 2020 communications concerning an issue within the jurisdiction of the government were knowingly made by and between other City Council members about Jason Carroll's role as a Police Chief and personal matters that constituted a quorum through the Council Members series of communications with one another detailing how they intended to vote to either keep or oust then Police Chief, Jason Carroll and their justifications for such action.

On or around June 18, 2020, the City of Jefferson noticed a Special Session to go into Executive Session on June 22, 2020, to "discuss and [c]onsider and/or approve voting on action concerning Police Chief complaints." The Notice failed to mention a "loss of confidence" vote or a "no-confidence vote."

#### Victor Perot Deposition Excerpt

```
12    Q    So the meeting of June 22, 2020, was to
13 discuss complaints against Mr. Carroll?
14    A    Yes.
15    Q    Okay.
16    A    And other agenda items.
17    Q    But the closed or executive session was held,
18 with regards to Section 541.074, to discuss complaints
19 against Mr. Carroll?
20    A    That's correct.
```

Perot Dep. 73:12-20.

After the notice was posted for the June 22, 2020 meeting City Council member Victor Perot called the Plaintiff on his cellular telephone and emphasized that he had talked to several of the Council Members and that "David Westbrook was on the fence" but that Jim Finstrom was against him, but there were "enough votes" to not worry about any anything.

PLAINTIFF'S FOURTH AMENDED PETITION

A TRUE COPY
ATTEST:
*Susan Anderson* 10
DISTRICT CLERK

On or around June 18, 2020, City Hall had finished collecting, one complaint against the Plaintiff's Facebook posts by hand delivery and two complaints by e-mail correspondence to the City in regard to the Plaintiff's Facebook posts.

After City Hall collected the written complaints lodged against the Plaintiff, the City failed to conduct an investigation into the complainants and their complaints as required by the Texas Government Code and City of Jefferson Policy.

Per City of Jefferson Police Department Standard Operating Procedure, any complaint that is lodged against the Chief of Police is required to be investigated by the Sergeant or the Texas Rangers are called to investigate.   But, nevertheless, when a complaint includes a non-jurisdictional complaint for issues arising out of rudeness or unprofessional conduct, then the Texas Commission on Law Enforcement dictates that the governing body that oversees the agency, such as the city manager should be contacted to investigate.   Therein, the City Administrator is empowered to "investigate all complaints in relation to matters concerning the managing of the government of the city." Jefferson, Tex., Municipal Code § 2-133(17).

The written complaints that were lodged against the Plaintiff to City Hall were all from friends of City Council member Tyrani Braddock.   Each complainant is personally familiar and acquainted with Tyrani Braddock and submitted their complaints after being solicited by Tyrani Braddock and her close friends who aided her in soliciting the complaints by Tyrani Braddock's motivation to deprive the Plaintiff of equal protections under the law.

Not only was each complainant's complaint solicited to be submitted to Doris Hines the City Secretary, but each complainant had a prejudicial view towards the Plaintiff because the Plaintiff at one time or another had either written a complainant a citation or participated in investigations directed against a complainant for various offenses ranging from cruelty to animals to failure to show insurance.

**Carroll Deposition Excerpt**

10    Q.  (By Mr. Starr)   So you never saw the complaints

A TRUE COPY
ATTEST:
Susan Anderson   11
DISTRICT CLERK

11  until they were produced in this lawsuit is your
12  testimony?
13    A. Correct.
14    Q. All right.
15    A. Because if I would have, then I could have
16  told -- the one that lives out in the county had
17  numerous run-ins with the law.
18        The one in Marshall, I almost worked an
19  animal cruelty case on until she actually came and got
20  her dog that she abandoned in Jefferson.
21        And the guy from Dallas, I have no idea who
22  he is.

Carroll Dep. 36:10-22.

According to the City of Jefferson Standard Operating Procedure all complaints collected by the City must be sent to the City Administrator, Mayor, and then the City Council.

After City Hall collected the written complaints lodged against the Plaintiff, the City failed to prompt the second in command of the Jefferson Police Department, Sergeant Tino Perez to conduct an investigation into the complaints against the Police Chief Jason Carroll as directed by the City's Standard Operating Procedure. Additionally, the City failed to prompt an investigation of the complaints and the complainants by forwarding the complaints to the Texas Rangers. Moreover, the City failed to have a city employee, a City Administrator perform an investigation of the complaints and the complainants by forwarding the complaints to the Texas Rangers or conducting the inherit investigation powers bestowed upon to the City Administrator.

Moreover, after the City collected the written complaints lodged against the Plaintiff, the City failed to deliver to Jason Carroll copies of the written complaints detailing the allegations against the Plaintiff by the complainants.

On June 22, 2020, a City Council meeting was held. Members of the public no matter where they lived were welcome to voice their opinion against Jason Carroll's Facebook posts. A select group of individuals associated with City Council member Tyrani Braddock began to talk negatively towards the Plaintiff during the Open Session. Then, City Council member Tyrani

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

Braddock arose from the council table and walked to the podium and began to speak against Jason Carroll to harass and intimidate the Plaintiff and insinuate he was racist and might use his gun on an African American if he was not stopped.

## Excerpt of June 22, 2020 City Council Meeting

**Braddock:** "Will we as citizens know that the next innocent Black man shot isn't shot or killed by a bullet that is fired from a gun in Chief Carroll's hands? Or could our decision to not possibly save someone's life?"

On June 22, 2020, a Closed Session was held, in which the City Council members, Tyrani Braddock, Sarah McKinnon, Victor Perot (interim mayor), David Westbrook, James (Jim) Finstrom, and Michael Martin (city attorney) were present.

The June 22, 2020 Closed Session was recorded with a cassette deck recorder by the former City of Jefferson Secretary, Mrs. Doris Hines.

During the June 22, 2020 Closed Session, council members reviewed the political Facebook posts of Mr. Carroll and the complaints regarding the Plaintiff's Facebook post in addition to reviewing his prior political Facebook posts.

A select few of the council members had already seen and reviewed the political Facebook posts prior to the June 22, 2020 Closed Session.

After deliberating during the Closed Session, Victor Perot then summoned the Plaintiff into the Closed Session meeting room.

After the Plaintiff walked into the Closed Session, he was surrounded and confronted by Council Members about the Facebook posts. During the Closed Session members of the City Council were grouped together in chairs forming a circle. Plaintiff was then forced to stand

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

13

somewhat within the circle and endure beratements, harassment, and chastising by Council Members.

Sometime before or after being berated it was agreed upon during the Closed Session following a consensus that was formulated when Plaintiff was not in attendance that there were not enough votes present to keep him should the Council vote in Open Session.

While in the Closed Session the Plaintiff was confronted by the City Council and Michael Martin about his political Facebook posts and told by City Council members clothed with the authority of state law in exercising local government authority, that he did not have a right to post on Facebook or speak on anything concerning politics.

During the Closed Session Mr. Carroll placed emphasis that his Facebook posts were political in nature and that he had posted political Facebook posts throughout his career and that he was not a racist as alleged by Council Member, Tyrani Braddock.

After or before chastising and berating the Plaintiff, Council Member Victor Perot during the Closed Session offered to the Plaintiff that the Plaintiff could either resign immediately or face public termination. During the Closed Session Plaintiff was reminded that an Honorable Discharge would be granted if he resigned quietly and that he needed to protect his license.

Acting beyond the scope of their powers, Plaintiff was then threatened by Council that his license was in dire jeopardy should he choose not to resign and that action would be taken against him. The Plaintiff was not allowed to pick the resignation date.

### McKinnon Deposition Excerpts

6    Q    So in the closed session, Mr. Carroll was
7  given an option to either be publicly terminated or
8  resign, correct?
9    A    Right.
10    Q    Okay. So how was it formulated that he would
11  be publicly terminated?
12    A    Because of discussions between the council
13  members.

PLAINTIFF'S FOURTH AMENDED PETITION

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

14

McKinnon Dep. 31:6-13

    11    Q    So he was asked to either publicly be
    12    terminated or resign in the closed session, correct?
    13    A    In the closed session.

McKinnon Dep. 32:11-13

The idea to give Plaintiff an ultimatum to either be fired or resign was admittedly made by the interim mayor Victor Perot, while the decision and action to present the ultimatum was decided by the entire council during the Closed Session.

**Perot Deposition Excerpt**

    24    Q    Okay.  And so -- there you go.  So it wasn't
    25    your idea to give him an option to resign.
    1     A    It was absolutely 100 percent my idea.
    2     Q    The idea originated from you?
    3     A    Yeah.  I asked that man down there whether or
    4     not I could -- after I asked the city council, Would
    5     you be in favor of us allowing him, which was my idea,
    6     of asking the city council, Would you be in favor of
    7     allowing him to resign versus us terminating him, and
    8     then turned to Mike and asked him if that was
    9     permissible.

Victor Perot Dep. 128:24-129:9.

The decision and tabulation to give the Plaintiff the ultimatum was a final decision and action that was deliberated on during a Closed Session.

**McKinnon Deposition Excerpts**

    24    Q    Then why did you give him an option to
    25    resign?
    1     A    Because we felt like it was the fair thing to
    2     do.

McKinnon Dep. 31:24-32:2.

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

Then after the Plaintiff was proverbially cornered and relented to the Council's demands the acceptance of the Plaintiff's resignation during the Closed Session was a decision and a vote

on a matter deliberated in a closed meeting. Thereafter, the Council convened to public session and voted on a matter that was already decided on in the Closed Session.

Tyrani Braddock, a government official took the individual action of retaliating against the Plaintiff through voicing her request in Closed Session that adverse action against the Plaintiff should be taken on the basis of Plaintiff's political Facebook posts, proximately causing the Plaintiff's injury.

Tyrani Braddock, a government official took the individual action of retaliating against the Plaintiff through soliciting request for complaints to be submitted to City Hall in response to Plaintiff's political Facebook posts, proximately causing the Plaintiff's injury.

Tyrani Braddock, a government official took the individual action of retaliating against the Plaintiff and harassing the Plaintiff through speaking during the June 22, 2020 Open Session of the City Council meeting using her words as retaliatory weapons to harass, badger, and defame the Plaintiff in response to Plaintiff's political Facebook posts, proximately causing the Plaintiff's injury.

Victor Perot, a government official took the individual action of retaliating and taking adverse action against the Plaintiff through handing the Plaintiff an ultimatum, on the basis of Plaintiff's political Facebook posts, proximately causing the Plaintiff's injury.

James Finstrom, a government official took the individual action of retaliating against the Plaintiff through voicing his request in Closed Session that adverse action (decision to offer an ultimatum) against the Plaintiff should be taken on the basis of Plaintiff's political Facebook posts, proximately causing the Plaintiff's injury.

Sarah McKinnon, a government official took the individual action of retaliating against the Plaintiff through voicing her request in Closed Session that adverse action against the Plaintiff should be taken on the basis of Plaintiff's political Facebook posts, proximately causing the Plaintiff's injury.

A TRUE COPY
ATTEST:
Susan Anderson 16
DISTRICT CLERK

David Westbrook, a government official took the individual action of retaliating against the Plaintiff through voicing his request in Closed Session that adverse action against the Plaintiff should be taken on the basis of Plaintiff's political Facebook posts, proximately causing the Plaintiff's injury.

Michael Martin, individually and acting as the principal of Michael D Martin Law Office took the individual action of retaliating against the Plaintiff through helping and aiding the Council Members and acting in concert with the government actors sitting on the council. Michael Martin was at all times a participant in the Closed Session wherein the adverse action against the Plaintiff was taken on the basis of Plaintiff's political Facebook posts, proximately causing the Plaintiff's injury.

Not only was the Special Session called by City Council to discuss the Plaintiff's Facebook posts but the animus behind the decision to terminate the Plaintiff was due to his Facebook posts, in which the ultimatum was presented to Mr. Carroll as City Council members were exercising their responsibilities under the color of state law and local ordinances in holding a Closed Session while at the same time exercising their authority and control over the Chief of Police.    The deposition of Sarah McKinnon presents the Defendants' retaliatory animus as a result of the Plaintiff's Facebook posts.

## McKinnon Deposition Excerpt

```
3    Q   So do you agree that a government employee
14   has First Amendment rights, though?
15   A   Well, yeah.
16   Q   Okay.
17       So do you think that because of
18   Mr. Carroll's Facebook post, that's why he was asked to
19   either resign or face public termination?
20   A   That and some other complaints.
21   Q   Okay.  Complaints centered around what?
22   A   Whatever it was these people said in the
23   meeting, and I certainly can't remember what they said.
24   Q   Okay.  So do you think that because of
25   Mr. Carroll's Facebook post that brought with it
1.   complaints, he was asked to resign or face public
```

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

> 2  termination?
> 3    A  I'm sorry, ask me that question again.
> 4    Q  Do you think that because of Mr. Carroll's
> 5  Facebook post that brought with it complaints, that's
> 6  why he was asked to either resign or face public
> 7  termination?
> 8    A  I don't know.
> 9    Q  So he was asked to either resign or face
> 10  public termination, based on the complaints, correct,
> 11  that y'all were hearing in the open session?
> 12    A  Yes.

McKinnon Dep. 20:13-21:12.

The City contends that Texas Government Code Section 614, Subchapter B did not apply to the Plaintiff because of the animus of Tyrani Braddock, Victor Perot, David Westbrook, James Finstrom, Sarah McKinnon, and Michael Martin had towards the Plaintiff, as they were not concerned with the complaints – only in punishing the Plaintiff for partaking in his First Amendment rights.

The threats made against the Plaintiff against his peace officer's license were made by Victor Perot while sitting in his position as elected alderman, interim mayor and done with the intent to exert unconstitutional influence over the Plaintiff for exercising his First Amendment right.

The adverse employment action and threats against Plaintiff's peace officer's license were acquiesced by each individual City Council member during the Closed Session, wherein the Council used or was misusing the authority of the state, when taking retaliatory action against the Plaintiff.

The adverse employment action by each individual City Council member on June 22, 2020 constituted a disciplinary action by the Council without legal authority and a dereliction for their failure to perform duties in accordance with Texas Government Code Section 614, Subchapter B.

PLAINTIFF'S FOURTH AMENDED PETITION

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

18

The adverse employment action of the Plaintiff was the result of each Council member of the City Council on June 22, 2020, using and conveying a forceful and objective ultimatum to the Plaintiff to either be fired or face public termination because of the Plaintiff's political Facebook posts, which was the substantial, sole, and motivating factor in the Council's decision to take an adverse action against the Plaintiff.

The adverse action against the Plaintiff during the Closed Session City Council meeting was made possible only because each individual Council member was acting with and clothed with the authority of state law in exercising local government authority and control over the Plaintiff and power to hold City Council meetings.

There existed persistent, widespread practice of City Council members although not authorized by officially adopted and promulgated written policy, but by widespread actions that were common and well settled as to constitute a custom of retaliating, attacking, demoting, and terminating government employees and citizens that criticized City officials or undertook constitutionally protected actions in partaking actions under their First Amendment rights.

### Excerpt of March 23, 2021 City Council Meeting

**Victor Perot**: "[t]he insinuation is that you know Victor Perot has ummm....ummm taken something of value on projects I...I... hear that and see it on Facebook you know it's insinuation if you have anything that you believe, or you know, or you can prove then take it across the street to the Courthouse to Angie...and let it go to the grand jury. But if anybody doesn't have anything then I suggest you not say anything else about it."

...

**Robert Baker**: "[n]ot that this is a Court, but I'm just trying to open the doors for a lot of disinformation happens on Facebook...umm...before you put it out on Facebook – there are slander and libel issues that could be ... you know prosecuted from this end (points to self) and they will be...if stupid crap like that continues."

PLAINTIFF'S FOURTH AMENDED PETITION

19

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

## McKinnon Deposition Excerpt

9    Q   "Things" being Facebook post?
10   A   Any sort of social media post.
11   Q   Okay. So you're of the opinion that a
12  government employee should not post political things of
13  nature on their Facebook?
14   A   That is correct.
15   Q   But you do agree that they have a right to
16  post about political issues on their Facebook?
17   A   I don't think they should.
18   Q   Well, the question is do you think that
19  they're allowed to post issues on their Facebook.
20   A   Depends on who they work for and what their
21  employer's told them.
22   Q   So if a government employer told a government
23  employee, "Don't post any political issues on your
24  Facebook," that's okay?
25   A   In my opinion, yes.

McKinnon Dep. 27:9-25.

## Carroll Deposition Excerpt

18  Q. (By Mr. Testa) Okay. And so in the past, you
19  mentioned the mayor has conducted investigations of
20  officer discipline without the chief being involved in
21  an investigation?
22  A. In the beginning, yes.
23  Q. Okay. Do you know specifically when a mayor has
24  sought discipline of an officer without the chief of
25  police being involved?
1   A. The
2   Q. Are
3   A. No.
4   Q. Was
5   A. Yes.
6   Q. And do you remember the officer?
7   A. Billy Reynolds.
8   Q. Is he the Dallas, Texas, officer?
9   A. He is now a justice of the peace in some county
10  in West Texas.
11  Q. Okay. And what was the mayor's contention about
12  Billy Reynolds?
13  A. Billy Reynolds was defending the police

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

14    department on Facebook.

15    Q. What was the allegation Billy Reynolds -- did he

16    do something wrong?

17    A. Did Billy Reynolds do something wrong?

18    Q. No. Why was he being investigated, or why was he

19    being chastised?

20    A. Oh, it made the mayor mad that he got on Facebook

21    and defended the city, just in general, and he told the

22    chief he wanted him disciplined.

23    Q. So it just made the mayor mad, so he went after

24    Mr. Reynolds?

25    A. Yes.

1    Q. Okay. And in your case, you made some people

2    mad, and the city council went after you?

3    MR. STARR: Objection, leading.

4    A. Yes.

5    Q. (By Mr. Testa) Okay. So if you make someone mad

6    in Jefferson, they tend to go after you?

7    A. Yes.

8    MR. STARR: Objection, leading.

9    A. Yeah.

Carroll Dep. 163:18-165-9.

Such persistent and widespread actions, comments, and attacks on citizens by current and former City Council members and officials fairly represented a City of Jefferson policy of stifling and controlling speech by citizens and employees, whereby current and former City Council members had actual and constructive knowledge of such custom and such custom was attributable to the governing body of the City and the officials acting under the color of state law.

In November of 2020, Sarah McKinnon was no longer on the City Council. After Jefferson, Texas City Council elections, new council members were sworn into office in November of 2020. Those newly sworn members were Ted Dickinson and Gary Amburn. Additionally, Robert Baker was sworn in to serve as the Mayor of Jefferson, Texas. They were sworn in to obey the laws.

Sometime after the Plaintiff's July 17, 2021 filing of suit against the City of Jefferson, the June 22, 2020 Closed Session recording was destroyed or was never recorded in entirety.

PLAINTIFF'S FOURTH AMENDED PETITION                         21

A TRUE COPY
ATTEST:
_Susan Anderson_
DISTRICT CLERK

Based on an expert report by the Plaintiff's expert the cassette tape was destroyed or manipulated in an effort to conceal voices on the recording. Pl.'s Mot. For Sanctions and Br. in Supp.: Omnia Praesumuntur Contra Spoliatorem, *Jason Carroll v. City of Jefferson, Victor Perot, et. al.* No. 2000094 (115th Dist. Ct., Marion County, Tex.). This destruction of the cassette tape was done in an effort to retaliate and conspire against the Plaintiff for his lawful right to petition for redress as a result of his Facebook posts and suit against the City of Jefferson. No certified agenda exists for the June 22, 2020 Closed Session.

Sometime between the months of November 2020 and June 2021 acting outside of the law and beyond their powers granted, members of the City Council would convene with attorney, Michael Martin of Michael D Martin Law Office and the Mayor Robert Baker during Closed Session(s) and began to deliberate the idea of raising a false defense to the Plaintiff's allegations of the Council failing to abide by the Texas Government Code Section 614, Subchapter B. **Exhibit 1.**

In an effort launched against the Plaintiff, City of Jefferson attorney Michael Martin acting as principal of Michael D Martin Law Office instructed his friend Sarah McKinnon not to cooperate with a lawful Deposition on Written Questions. Mot. For Contempt Against Sarah McKinnon, *Jason Carroll v. City of Jefferson, Victor Perot, et. al.* No. 2000094 (115th Dist. Ct., Marion County, Tex.). The actions by Michael Martin and Sarah McKinnon were for the purposes of impeding, hindering, obstructing, and defeating, the due course of justice in the State of Texas, County of Marion, Texas with the sole intent based on the recordings and evidence to deny to the Plaintiff the equal protection of the laws and injure him.

Based on information and belief where the belief is based on factual information that makes the inference of culpability plausible wherein Robert Baker and Michael Martin meet outside or within City Council meetings to collaborate against Jason Carroll and to organize Closed Session Meetings to discuss the plot to obstruct justice by vocalizing a fabricated defense and imploring members to not cooperate under the laws of Texas all under the guise of a meeting under 551.071.

A TRUE COPY
ATTEST:
*Susan Anderson*                    22
DISTRICT CLERK

Based on information and belief where the belief is based on factual information that makes the inference of culpability plausible Council Members cloaked with the authority of state law in exercising local government authority in calling Closed Session meetings meet to discuss matters with the City Attorney, Michael Martin of Michael D Martin Law Office, where actions to take against the Plaintiff were discussed in contravention of the purposes and clearly enumerated reasons to call for a deliberation with the City Attorney during a Closed Session under Section 551.071 of the Texas Government Code. **Exhibit 1.**

Based on information and belief where the belief is based on factual information that makes the inference of culpability plausible Robert Baker was told or advised to disavow any mention of Texas Government Code 614 when answering the Plaintiff's First Set of Interrogatories and that a fabricated defense would be employed in terms of a "loss of confidence" vote but that other City Council members would need to comply with the fabricated defense. **Exhibit 1.** Robert Baker then attested and verified Plaintiff's First Set of Interrogatories that he had not spoken to anyone in regard to Plaintiff's Petition or suit and that Texas Government Code 614 Subchapter B, did not apply to the Plaintiff.

Based on information and belief where the belief is based on factual information that makes the inference of culpability plausible Defendant Robert Baker, Sarah McKinnon, and Victor Perot agreed in some manner with Michael Martin as principal of Michael D Martin Law Office, in the effort launched by City Council members to obstruct the Plaintiff's right to petition and commit acts intended to deprive the Plaintiff of the right to petition and in retaliation for exercising his First Amendment rights. The actions by Robert Baker, Victor Perot, and Sarah McKinnon along with Michael Martin were for the purposes of impeding, hindering, obstructing, and defeating, the due course of justice in the State of Texas, County of Marion, Texas with the sole intent based on the recordings and evidence presented herein to deny to the Plaintiff the equal protection of the laws and injure him.

Based on information and belief where the belief is based on factual information that makes the inference of culpability plausible sometime before March 26, 2021 Robert Baker and Michael Martin put into motion their plan to formulate the "loss of confidence" defense. To determine

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

what Council Members would comply with subornation of perjury, Robert Baker called to order a Closed Session meeting. The Closed Session(s) were called in contravention to the Texas Government Code Open Meetings Act to discuss fraud, subornation of perjury, and conspire, none of which are listed reasons to meet under the Texas Open Meetings Act. **Exhibit 1.**

### Perot Deposition Excerpt

```
19      Q   (BY MR. TESTA)  So are you aware that the
20  defense of Jefferson is that y'all terminated Jason
21  based on a vote of loss of confidence?
22              MR. STARR:  Objection, form.
23      A   Loss of confidence was discussed in our
24  meeting.
25      Q   (BY MR. TESTA)  So Ms. McKinnon is wrong.
1       A   Ms. McKinnon is wrong.
2       Q   Okay.  So earlier you said Ms. McKinnon is an
3  honest and truthful person.
4       A   Yes, she is.
```

Victor Perot Dep. 122:19-23:4

Based on information and belief some of the City Council members on the advice of Michael Martin with the aid of Robert Baker in heading up the Closed Session colluded during the Closed Session(s) to form a false defense that the Plaintiff was told to hand in his resignation due to a loss of confidence vote allegedly taken in the June 22, 2020, Closed Session. The individual actions by Michael Martin and Robert Baker caused harm and injustice to the Plaintiff. The individual actions of Sarah McKinnon and Victor Perot in carrying out the collusive false defense during their depositions caused harm to the Plaintiff.

### Victor Perot Deposition Excerpt

```
7       Q   Okay.  And so they specifically talked about
18  loss of confidence in regards to the Jefferson
19  ordinance.
20      A   Those exact words were used.
21      Q   Okay.
```

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

24

Perot Dep. 161:17-21.

## **Victor Perot Deposition Excerpt**

    21    Q    So, essentially, the city council, they were
    22  voting on the loss of confidence, which required a
    23  two-thirds vote, correct?
    24    A   Yes.

Perot Dep. 68:21-24.

Two former City Council members went along with the attack against the Plaintiff, whereby acting in furtherance of the conspiracy to deprive the Plaintiff of the right to petition and exercising his First Amendment rights with the intention to obstruct justice.

During the depositions of Sarah McKinnon and Victor Perot statements were made that were material to the Plaintiff's case and connected with an official proceeding.

Defendant, McKinnon testified during a May 5, 2021 deposition that she could not remember whether loss of confidence was discussed, but, nevertheless, evidence exists that she did remember that it was not discussed. *See* Mot. For Contempt Against Sarah McKinnon, *Jason Carroll v. City of Jefferson, Victor Perot, et. al.* No. 2000094 (115th Dist. Ct., Marion County, Tex.).

Defendant, Victor Perot testified during an April 30, 2021 deposition that loss of confidence was discussed amongst members in the June 22, 2020 Closed Session.

On July 7, 2021 an affidavit was created by former City Council member, Gary Amburn that outlined that loss of confidence was never discussed during the June 22, 2020 Closed Session and that the Council members were well aware that they were not telling the truth and interfering with Plaintiff's rights and obstructing justice in making an agreement to derail and fabricate testimonial evidence to retaliate against the Plaintiff for his right to petition and exercise his First Amendment rights. **Exhibit 1**.

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

On August 16, 2021, a deposition was held at the undersigned counsel's Jefferson, Texas office location. There, all defendants with the exception of Defendant, David Westbrook attended the deposition of the Plaintiff, to further their intimidation, harassment, and retaliation campaign towards the Plaintiff for exercising his right to petition and exercise his First Amendment rights.



(August 16, 2021, Deposition of Plaintiff, Jason Carroll)

The City of Jefferson, through the acts and omissions of its City Council and Mayor, Robert Baker condoned, approved, ratified, and authorized the acts complained of herein and established policies, practices, customs, usages, and procedures which effectively permitted, authorized, approved, condoned and/or ratified the conduct made the basis of this suit. The Plaintiff's constitutional rights were violated through the actions of each individual Defendant, causing the Plaintiff harm.

The actions by Robert Baker, Michael Martin, Sarah McKinnon, and Victor Perot were for the purposes of impeding, hindering, obstructing, and defeating, the due course of justice in the State of Texas, County of Marion, Texas with the sole intent and motivation based on the recordings and evidence presented herein to deny to the Plaintiff the equal protection of the laws and injure him.

PLAINTIFF'S FOURTH AMENDED PETITION

A TRUE COPY
ATTEST:
*Susan Anderson*
DISTRICT CLERK

26

The inaction of Tyrani Braddock, David Westbrook, and Jim Finstrom in preventing the conspiracy of obstructing the Plaintiff's right to petition and in exercising his First Amendment rights was for the purposes of impeding, hindering, obstructing, and defeating, the due course of justice in the State of Texas, County of Marion, Texas with the sole intent based on the recordings and evidence presented herein to deny to the Plaintiff the equal protection of the laws and injure him.

The City Council of Jefferson, Texas failed to abide by Texas Government Code Section 614, Subchapter B. The Plaintiff had an expectation of employment, subject to the proper administration of the law, proper administration of City of Jefferson Policies and Procedures, and abidance in that Texas Government Code Section 614, Subchapter B would be lawfully followed and no action would be taken in regard to the complaints or that lawful action would be taken against him after abidance of Texas Government Code Section 614, Subchapter B, which is a ministerial act.

## VI. CAUSES OF ACTION

### A. First Cause of Action: Municipal liability under 42 U.S.C. § 1983

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

Defendant City of Jefferson, Texas.

At all times relevant to Plaintiff's allegations made, Defendant City of Jefferson developed, ratified, enforced, and continues to enforce an official city policy or custom that constitutes impermissible state action intended to censor, chill, and interfere with the First Amendment activity of government employees who post and discuss issues of political and social concern on Facebook.

PLAINTIFF'S FOURTH AMENDED PETITION

A TRUE COPY
ATTEST:
Susan Anderson 27
DISTRICT CLERK

The City's unconstitutional policy or custom was and remains a decision retaliate against the Plaintiff when a matter of public concern is posted or shared on individual citizens and city employee's private Facebook accounts.

The City's inadequate training along with the City's failure to adopt a needed policy to prevent retaliation of government employees and citizens right to free speech equates to deliberate indifference to the fact that a violation of First Amendment rights is a highly predictable consequence of the City's failure to train and adopt a policy of prevention of First Amendment right violations.

The City's unconstitutional policy or custom also was and remains a decision to restrict and discourage Plaintiff and other citizens from exercising his/their right to freely discuss matters of public concern, express viewpoints on matters of public concern with which Defendants disagree.

This policy was ratified by final policymakers for the City, including the City Council.

The City condoned and ratified the individual Defendants' acts of retaliation, viewpoint discrimination, and censorship made under color of law exemplify the ratification and enforcement of the City's policy or custom.

To advance the City's unconstitutional policy or custom, the Individual Defendants, through their positions as final policymakers for the City, knowingly influenced and encouraged other City officials and employees to act in furtherance of the City's policy. This includes, for example, Tyrani Braddock acting under the color of state law in using her title as a member of City Council when she solicited complaints from citizens. Acting out of animosity and retaliation towards the Plaintiff, City Council member Tyrani Braddock posted on her Facebook that citizens should submit complaints against the Plaintiff, albeit for exercising his First Amendment rights.

The official City policy or custom was the moving force behind the Individual Defendants' acts of retaliation and censorship, and the resulting harm to Plaintiff, as detailed in this Complaint.

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

28

At all times relevant, Defendants were or should have been aware that the official policy or longstanding custom as alleged was unconstitutional.

As a direct and proximate cause of the City's unconstitutional official policy or longstanding custom, Plaintiff was deprived of his First Amendment right to free speech and to petition. Plaintiff has suffered and continues to suffer harm to his reputation, public embarrassment, fear of further harassment, intimidation, and retaliation, and other adverse actions from Defendants, and their respective attorney(s).

As a result, Plaintiff is entitled to actual and compensatory damages against Defendant City of Jefferson under 42 U.S.C. § 1983, in an amount to be proven at trial.

Plaintiff also seek attorneys' fees under 42 U.S.C. § 1988, and for any further relief the Court deems just and proper.

**B. Second Cause of Action: Unconstitutional retaliation against the exercise of rights to free speech under the First Amendment and 42 U.S.C. § 1983.**

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

Plaintiff spoke as a citizen on matters of public concern and therefore engaged in constitutionally protected speech. Thereafter, the Plaintiff suffered an adverse employment action because of his speech.

Defendants in their individual capacities, Tyrani Braddock, David Westbrook, Jim Finstrom, Victor Perot, and Sarah McKinnon, and Michael Martin along with Michael D Martin Law Office performed non-discretionary functions wherein their conduct violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known.



A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

29

Defendant, Michael Martin, is not a state official. However, Plaintiff alleges that Michael Martin acted under color of state law as a private person under a contract with the municipality to perform services for a public function purpose through Michael D Martin Law Office.

Plaintiff would show the court that the adverse employment action directed at the Plaintiff was the result of each City Council Members and Michael Martin, Michael D Martin Law Office animosity towards him, and in particular for his posting of matters of public and social concern. Moreover, the Plaintiff would show the court that his termination was the result of City Council member, Tyrani Braddock's personal animosity toward him.

Such conduct has permanently damaged Plaintiff's career, and his personal and professional reputation. As such, Plaintiff is entitled to actual, compensatory, and punitive damages against the Individual Defendants under 42 U.S.C. §1983 in an amount to be proven at trial.

## C. **Third Cause of Action: Civil conspiracy to deprive constitutional rights under—42 U.S.C. § 1983**

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

Defendants, in their individual capacities Tyrani Braddock, David Westbrook, Jim Finstrom, Victor Perot, Robert Baker, Michael Martin, Michael D Martin Law Office, and Sarah McKinnon.

Individual Defendants expressly or tacitly agreed to retaliate against and intimidate the Plaintiff in the exercise of his constitutional rights to criticize Defendants, express dissenting viewpoints on matters of public concern, file a petition for redress, and seek public information unfavorable to Defendants. They also complicity agreed to restrict Plaintiff's ability to express opinions on matters of public concern.

The Individual Defendants intended their agreement, and their acts under the agreement, to chill and discourage Plaintiff from exercising his First Amendment right to criticize the City

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

and the Individual Defendants, petition for relief in state court, and express dissenting viewpoints on matters of public concern, and seek and publish public information unfavorable to Defendants.

As detailed in this Complaint, each of the Individual Defendants in this section engaged in acts of retaliating against the Plaintiff's clearly established First Amendment rights and right to petition for redress. The Individual Defendants undertook their agreement and related acts under the color of law. No reasonable official would have so unlawfully, willingly, and arbitrarily conspired to deprive the Plaintiff of his constitutional rights.

The Individual Defendants knowingly and willfully conspired against the Plaintiff and others with a reckless and callous disregard for, and deliberate indifference to, his First Amendment rights and right to petition.

As a direct and proximate cause of the Individual Defendants' unlawful agreement and related acts, Plaintiff has been deprived of his rights under the First Amendment to the United States Constitution, and suffered damage to his reputation, public embarrassment, and fear of further retaliation and intimidation.

Plaintiff is entitled to actual, compensatory, and punitive damages against the Individual Defendants under 42 U.S.C. §1983 in an amount to be proven at trial.

## D. Fourth Cause of Action: Failure to Intervene – 42 U.S.C. § 1983

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

Defendants, in their individual capacities Tyrani Braddock, David Westbrook, Jim Finstrom, Robert Baker, Michael Martin, and Michael D Martin Law Office.

Plaintiff contends that Michael Martin, is not a state official. However, Plaintiff alleges that Michael Martin acting as principal of Michael D Martin Law Office acted under color of state law by conspiring with one or more state officials to deprive the Plaintiff of his constitutional

PLAINTIFF'S FOURTH AMENDED PETITION

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

rights, violating Plaintiff's right to petition and First Amendment rights and failed to intervene to stop the violation of the Plaintiff's rights. Plaintiff further contends that the Defendants Robert Baker, Tyrani Braddock, David Westbrook, and Jim/James Finstrom, should be liable for that violation because aforementioned Defendants failed to intervene to stop the violation of conspiracy to obstruct justice and prevent deprivation of Plaintiff's right to petition under the equal protection of the laws.

Defendants as City Council members had a duty to intervene based on the oath of office and City of Jefferson's Personnel Policy & Procedures Manual maintaining that the Council must enforce reasonable standards pertinent to the City with all due respect for established State and Federal laws; therefore the Council members present during the Closed Session meeting(s) were and at all times had a duty to prevent the commission of any crime, thwart any conspiracy to obstruct justice, and follow Texas Open Meeting Act rules in conducting Closed Sessions with Consultation of Attorney for only enumerated purposes set out in Section 551.071 of the Texas Government Code.

Defendants in their individual capacities Robert Baker, Tyrani Braddock, David Westbrook, and Jim Finstrom, had a reasonable opportunity to intervene and failed to intervene. As a direct and proximate cause of the Individual Defendants' unlawful agreement and related acts, Plaintiff has been deprived of his rights to seek redress in Court and suffered damage to his reputation, public embarrassment, and fear of further retaliation and intimidation.

Plaintiff is entitled to actual, compensatory, and punitive damages against the Individual Defendants under 42 U.S.C. §1983 in an amount to be proven at trial.

## E. Fifth Cause of Action: Civil Conspiracy to Obstruct Justice under – 42 U.S.C. § 1985(2)

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

Defendants in their individual capacities, Tyrani Braddock, David Westbrook, Jim Finstrom, Victor Perot, Robert Baker, Michael Martin, Michael D Martin Law Office, and Sarah McKinnon.

In *Kush v. Rutledge*, 460 U.S. 719, 725 (1983), the Supreme Court noted that the first portion of § 1985(2) relates to federal judicial proceedings and the second part of section 1985(2) applies to conspiracies to obstruct the course of justice in state courts. *Kush*, 460 U.S. at 725. The second clause of section 1985(2), requires "the conspirators' actions be motived by an intent to deprive their victims of the equal protections of the laws." *Id.*

The Individual Defendants intended their agreement in meetings that their acts under the agreement were for the purpose to obstruct the course of justice and derail and discourage the Plaintiff from exercising his right to petition and access to justice in a state Court.

Plaintiff has alleged facts that involve intimidation and harassment of the Plaintiff, Jason Carroll. Plaintiff has alleged facts and evidence of the obstruction of justice in the form of witness tampering in an official state proceeding. Plaintiff has sufficiently alleged accounts of obstruction of the course of justice, motivated by discriminatory animus of the Plaintiff exercising his First Amendment right, whereby Defendant Robert Baker, Defendant Michael Martin, and Michael D Martin Law Office took actions to deprive the Plaintiff of equal protection of the law. Thereafter, Victor Perot acted in furthering of the obstruction. Therefore, Plaintiff seeks damages from the Defendants for their actions directed at all times to harm and impede the Plaintiff, under 42 U.S.C. § 1985(2).

As a direct and proximate cause of the Individual Defendants' unlawful agreement and related acts, Plaintiff has been deprived of his rights to seek redress in Court and suffered damage to his reputation, public embarrassment, and fear of further retaliation and intimidation.

Plaintiff is entitled to actual, compensatory, and punitive damages against the Individual Defendants under 42 U.S.C. §1983 in an amount to be proven at trial.

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

## F. Sixth Cause of Action: Declaratory Judgment; Texas Government Code Chapter 614, Subchapter B

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

Defendants in their official capacities, Tyrani Braddock, David Westbrook, Jim Finstrom, Victor Perot, and Sarah McKinnon failed to act within their legal official capacities by not abiding by Texas Government Code Chapter 614, Subchapter B.

Under Chapter 614, a complaint against a peace officer to be considered by the head of a state agency or local law enforcement agency must be in writing and signed by the complainant. Before any disciplinary action can be taken against the officer a copy of the signed complaint must be given to the officer and the complaint must be investigated to show that there is evidence to prove the allegation of misconduct.

Pursuant to section 37.009 of the Civil Practices and Remedies Code, Jason Carroll request the Court to construe Texas Local Government Code 614.022 and declare that Defendants in their official capacities violated said law by failing to comply with the statutory provisions of Chapter 614 (of the Texas Local Government Code), Subchapter B.

Jason Carroll further requests the Court to construe Texas Local Government Code § 614.023 and declare that Defendants in their official capacities violated said law by not conducting an investigation into the complaints and failing to provide Jason Carroll with copies of the signed written complaints giving clear allegation, and declare that such disciplinary action in giving the Plaintiff an ultimatum was an adverse employement action.

## G. Seventh Cause of Action: Mandamus – Texas Government Code Section 551.144

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

34

Defendant City of Jefferson, Texas.

An offense under Texas Government Code Sec. 551.144, occurs when a member or individual knowingly calls or aids in calling or organizing a closed meeting when the purposes of such a closed meeting are not permitted under the Texas Government Code.

Under Section 551.071 of the Texas Government Code a Closed Session may only be called to consult with an attorney when the governmental body seeks the advice of its attorney about pending or contemplated litigation or to discuss a settlement offer.

The City Council of Jefferson, Texas called Closed Session meetings in contravention to the purposes of the Texas Open Meetings Act.

## H. Eighth Cause of Action: Mandamus – Texas Government Code Section 551.102

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

Defendant City of Jefferson, Texas.

An offense under Texas Government Code Sec. 551.102, occurs when a final action, decision, or vote on a matter deliberated in a closed meeting is made during the closed meeting and not in an open meeting in compliance with the notice provisions of the Texas Government Code.

## I. Ninth Cause of Action: Mandamus – Texas Government Code Section 551.143

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

Defendant City of Jefferson, Texas.

A TRUE COPY
ATTEST:
*[signature]*
DISTRICT CLERK

An offense under Texas Government Code Sec. 551.143, occurs when they knowingly communicate or engage in communication where at least one communication among a series of communications that each occur outside of a meeting concern an issue within the jurisdiction of the governmental body in which the members engaging in the individual communications constitute fewer than a quorum of members but the members engaging in the series of communications constitute a quorum of members.

**J. Tenth Cause of Action: Mandamus – Texas Government Code Section 551.041**

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

Defendant City of Jefferson, Texas.

An offense under Texas Government Code Sec. 551.041, occurs when a City fails to properly notice a meeting correctly. A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body.

Defendants allege that loss of confidence was discussed and a reason for Mr. Carroll's adverse employment action; but, with no mention of an action item in the June 22, 2020 agenda for no-confidence or loss of confidence. The City of Jefferson had noticed in the past no-confidence in the agenda for public officials undergoing such action items.

**K. Eleventh Cause of Action: Mandamus – Texas Government Code Section 551.103 & 551.104**

Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

Defendant City of Jefferson, Texas.

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

PLAINTIFF'S FOURTH AMENDED PETITION

36

An offense under Texas Government Code Sec. 551.103, occurs when a City fails to either keep a certified agenda or make a recording of the proceedings of each closed meeting.

An offense under Texas Government Code Sec. 551.104, occurs when a City fails to preserve either a certified agenda or a recording of the proceedings of a closed meeting for two-years after the date of such meeting.

## IX. CONDITIONS PRECEDENT

All conditions precedent to the plaintiff's claim for relief have been performed or have occurred.

## XI. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs prays for judgment against Defendants, individually, jointly, and severally, as follows:

A. Court makes the declaration set forth herein directing the Defendants to immediately withdraw the disciplinary action taken in violation of Government Code Section 614.023, Subchapter B, and reinstate Plaintiff to full active duty as a result of the unlawful disciplinary action and attorney fees in accordance with §37.009 such finding;

B. The Court enter a finding that the City of Jefferson violated the provisions of the Texas Government Code, Sections, 551.041, 551.102, 551.103, 551.143, 551.144;

C. That the Court order the meeting held on June 22, 2021, voidable under Section 551.141 of the Texas Government Code;

D. That the Court order the immediate reinstatement of the Plaintiff to the position held;

E. That Plaintiff have and recover judgment against the individual defendants, acting under color of state law, jointly and severally, under 42 U.S.C. § 1983 for the violation of his First Amendment rights, such damages to include lost

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

income and pension benefits in the past, future lost income, past and future damage to his professional and personal reputation, and past and future mental anguish in an amount no less than $1,500,000.00;

F. Plaintiff prays further under 42 U.S.C. § 1983 for exemplary damages for the malicious, willful, intentional and deliberate conduct of said individual defendants acting under color of state law in acting to deprive him of his constitutional and statutory rights, such exemplary damages to be assessed against each individual defendant in an amount sufficient to punish said defendant and to provide a deterrent;

G. That Plaintiff have and recover judgment against the individual defendants, acting under color of state law, jointly and severally, under 42 U.S.C. § 1983 for engaging civil conspiracy to deprive him of his rights, such damages to include lost income and benefits in the past, future lost income, past and future damage to his professional and personal reputation, and past and future mental anguish;

H. Plaintiff prays further under 42 U.S.C. § 1983 for exemplary damages for the malicious, willful, intentional and deliberate conduct of said individual defendants acting under color of state law in acting to deprive him of his constitutional and statutory rights, such exemplary damages to be assessed against each individual defendant in an amount sufficient to punish said defendant and to provide a deterrent;

I. That Plaintiff have and recover judgment against the individual defendants, acting under color of state law, jointly and severally, under 42 U.S.C. § 1985 for engaging a civil conspiracy to obstruct justice in state court and deprive him of his rights, such damages to include lost income and benefits in the past, future lost income, past and future damage to his professional and personal reputation, and past and future mental anguish;

J. Plaintiff prays further under 42 U.S.C. § 1985 for exemplary damages for the malicious, willful, intentional and deliberate conduct of said individual defendants acting under color of state law in acting to deprive him of his constitutional and statutory rights, such exemplary damages to be assessed

A TRUE COPY ATTEST:
_Jacquelin Anderson_
DISTRICT CLERK

against each individual defendant in an amount sufficient to punish said defendant and to provide a deterrent;

K. For Plaintiff's attorneys' fees, costs, and disbursements under 42 U.S.C. § 1988; and

L. For such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

**THE TESTA LAW GROUP**

BY: _____

NICHOLAS J. TESTA
SBN: 24086845 (TX.)
SBN: 37327 (LA.)
SBN: 1008096 (FL.)
121 W. AUSTIN ST.
JEFFERSON, TEXAS 75657
903.665.2000 PHONE
877.780.9052 TOLL-FREE
832.779.8470 FAX
TESTA@TESTALAWGROUP.COM
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record as listed below by e-filing, hand delivery, regular mail, by certified mail, return receipt requested, and/or by facsimile transmission, on September 29, 2021.

**Service Email: martinlawoffice@etex.net**
**Service Fax: (903) 843-2816**
Michael D. Martin, Attorney at Law
PO BOX 657
Gilmer, TX 75644

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

39

Michael Martin
Michael D. Martin, Attorney at Law
Attorney for Defendant(s)
City of Jefferson
PO BOX 657
Gilmer, TX 75644
Tel: (903) 843-3061

**Service Email: mstarr@ccfww.com**
**Service Fax: 903-753-6989**
Michael Starr
Coghlan Crowson, LLP.
PO Box 2665
Longview TX 75606

Michael Starr
Coghlan Crowson, LLP.
Attorney for Defendant(s)
1127 Judson Road, Suite 211
Longview TX 75601
Phone: 903-758-5543
Fax: 903-753-6989

Respectfully Submitted,

**THE TESTA LAW GROUP**

BY: _____

NICHOLAS J. TESTA
SBN: 24086845 (TX.)
SBN: 37327 (LA.)
SBN: 1008096 (FL.)
121 W. AUSTIN ST.
JEFFERSON, TEXAS 75657
903.665.2000 PHONE
877.780.9052 TOLL-FREE
832.779.8470 FAX
TESTA@TESTALAWGROUP.COM
**ATTORNEY FOR PLAINTIFF**

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

# Exhibit 1

**CAUSE NO. 2000094**

| | | |
|---|---|---|
| **JASON CARROLL** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **CITY OF JEFFERSON,** | § | |
| **VICTOR PEROT, individually and in** | § | |
| **official capacity JIM FINSTROM,** | § | |
| **individually and in official capacity,** | § | |
| **TYRANI BRADDOCK** | § | |
| **individually and in official capacity,** | § | |
| **DAVID WESTBROOK, individually** | § | |
| **and in official capacity, ROBERT BAKER** | § | |
| **individually and in official capacity,** | § | |
| **SARAH MCKINNON, individually and in** | § | |
| **official capacity, MICHAEL MARTIN** | § | |
| **individually and in official capacity** | § | |
| *Defendants.* | § | **MARION COUNTY, TEXAS** |

## AFFIDAVIT OF GARY AMBURN

| | |
|---|---|
| STATE OF TEXAS, | § |
| COUNTY OF MARION | § |

**BEFORE ME,** the undersigned authority, on this day personally appeared GARY AMBURN, known to me to be the person whose name is subscribed below and who, being first duly sworn to me, upon his oath deposed and stated as follows:

1. My name is GARY AMBURN. I am over the age of eighteen (18) years, of sound mind, and have personal knowledge of the facts occurring set forth herein below and know them to be true and correct as stated.
2. I have been in law enforcement for over 50 years of my life.
3. I served as the Chief of Police for the City of Jefferson, Texas for 20 years through three tenures as Chief.
4. I was a City Council member for the city of Jefferson, Texas from November of 2020 until my resignation in June of 2021.
5. I was not a member of City Council on the date of June 22, 2020.
6. During a City Council meeting the City Attorney, Michael Martin essentially told the Council that we were in trouble because something had occurred to the June 22, 2020 recording of the Executive Session tape. I know and knew at the time of this meeting that this was a serious recording because it is the tape where the Council discussed Jason

1     Affidavit of Gary Amburn

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

Carroll. All the council members and the mayor were present during this meeting where Michael Martin was discussing the tape not being clear in perception.

7. After hearing from Michael Martin that the audio tape of the June 22, 2020 session was not where anyone could hear what was being said, I made the suggestion in the meeting that we should send the tape to the authorities because they have equipment that can clear the voices up and make it perceptible. My suggestion seemed unwanted and was unheeded by the council.

8. During a separate City Council meeting with every council member present including the mayor the City Attorney Michael Martin effectively told us that we had messed up or used words of that nature. He then elaborated that there were only two ways to get rid of a Police Chief and the council did not go about it the correct way. Michael Martin then brought up "loss of confidence." I wanted clarification on just what he was saying and asking so I then asked Mr. Martin whether "loss of confidence" was discussed during the June 22, 2020 meeting and he replied almost verbatim that, well there could/can be.

9. I spoke disdain for such a suggestion.

10. Council member Tyrani Braddock then stated that she would absolutely "not lie."

11. I agreed with Tyrani Braddock.

12. I do not remember any other Council member or the mayor speaking out or up against Mr. Martin's insinuation of lying about raising loss of confidence against Mr. Carroll as a defense to his lawsuit against the City.

13. After it appeared that not everyone was on board with what Michael Martin was suggesting the conversation subject changed course and loss of confidence was never brought up again.

14. On one occasion not involving a closed session, I asked Sarah McKinnon if a loss of confidence discussion was raised during the June 22, 2020 meeting on the topic of Mr. Carroll, she replied to my question that it was not discussed.

15. During my last council meeting on June 14, 2021, Mr. Starr said "Rolston" will dismiss Mr. Carroll's case.

16. The three sessions I am discussing in this affidavit were recorded by audio recording device by the City Secretary to the best of my knowledge and recollection.

FURTHER AFFIANT SAYETH NOT.

YVONNE A. RAMIREZ
Notary Public, State of Texas
Comm. Expires 08-30-2022
Notary ID 131704672

_____
GARY AMBURN

SUBSCRIBED AND SWORN TO BEFORE ME on this ____ day of July, 2021, by GARY AMBURN, to certify which witness my hand and official seal of office.

YVONNE A. RAMIREZ
Notary Public, State of Texas
Comm. Expires 08-30-2022
Notary ID 131704672

_____
Notary Public, State of Texas

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

2                          Affidavit of Gary Amburn

# Exhibit 2

CAUSE NO. 2000094

| | | |
|---|---|---|
| JASON CARROLL, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF JEFFERSON, VICTOR PEROT, | § | |
| Individually and in official capacity, | § | |
| JIM FINSTROM, individually and in official | § | |
| capacity, TYRANI BRADDOCK, | § | |
| individually and in official capacity, | § | |
| DAVID WESTBROOK, individually and | § | |
| In official capacity, ROBERT BAKER, | § | |
| Individually and in official capacity, | § | |
| SARAH MCKINNON, individually and in | § | |
| Official capacity, MICHAEL MARTIN, | § | |
| Individually and in official capacity, | § | |
| | § | |
| Defendants. | § | MARION COUNTY, TEXAS |

DWQ FROM:

BRETT BUTLER SMITH
1051 CR 3212
JEFFERSON, TEXAS 75657

ORDERED BY:

NICHOLAS J. TESTA
TESTA LAW GROUP
121 W. AUSTIN STREET
JEFFERSON, TEXAS 75657
TELEPHONE: (903)665-2000

☐ ORIGINAL

COURT REPORTING & LITIGATION SUPPORT
2208 JUDSON ROAD, SUITE 104
LONGVIEW, TEXAS 75605
SERVICES@COURTREPORTINGLS.COM

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

## DEPOSITION SUBPOENA TO TESTIFY OR PRODUCE DOCUMENTS OR THINGS

### THE STATE OF TEXAS
### COUNTY OF MARION

To any Sheriff or Constable of the State of Texas or other person authorized to serve subpoena under Rule 176 TRCP. You are hereby commanded to subpoena and summon the following witness:

### Brett Smith
### 1051 CR 3212
### Jefferson, Texas 75657

to be and appear before a Notary Public of my designation in the State of Texas for Court Reporting & Litigation Support and pursuant to Texas Rules of Civil Procedure 200.2 there to make answers under oath of certain written questions to be propounded to **Brett Smith**, and in accordance with TRCP 176.6(c) at any time whatsoever, then and there to give evidence at the instance of the **Plaintiff**, in certain **Cause No. 2000094** now pending on the docket of the **District Court in Marion County, Texas**. This subpoena is issued under and by virtue of authority of a notice duly served in which **Jason Carroll is the Plaintiff and City of Jefferson et al are the Defendants,** and there remain from day to day and time to time until discharged according to law.

ISSUED this the **14ᵗʰ day of June, 2021**

*Melanie S. Smith*

NOTARY PUBLIC, STATE OF TEXAS
ISSUING OFFICER
Court Reporting & Litigation Support
2208 Judson Road, Suite 104, Longview, Texas 75605
(903)758-2183

MELANIE S. SMITH
Notary Public, State of Texas
Comm. Expires 04-24-2025
Notary ID 131100459

Attorney Requesting Subpoena:

Nicholas Testa
121 W. Austin Street
Jefferson, Texas 75657
(903)665-2000

### RULE 176.8 ENFORCEMENT OF SUBPOENA

(a)     Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

A TRUE COPY
ATTEST:

*Susan Anderson*

DISTRICT CLERK

CAUSE NO. 2000094

| | | |
|---|---|---|
| **JASON CARROLL** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **CITY OF JEFFERSON,** | § | |
| **VICTOR PEROT, individually and in** | § | |
| **official capacity JIM FINSTROM,** | § | |
| **individually and in official capacity,** | § | |
| **TYRANI BRADDOCK** | § | |
| **individually and in official capacity,** | § | |
| **DAVID WESTBROOK, individually** | § | |
| **and in official capacity, ROBERT BAKER** | § | |
| **individually and in official capacity,** | § | |
| **SARAH MCKINNON, individually and in** | § | |
| **official capacity, MICHAEL MARTIN** | § | |
| **individually and in official capacity** | § | |
| *Defendants.* | § | **MARION COUNTY, TEXAS** |

## NOTICE OF TAKING DEPOSITION
## UPON WRITTEN QUESTIONS

To Defendants: **Mike Martin, Esq., Michael Starr, Esq.** Defendant City of Jefferson, Victor Perot, Jim Finstrom, Tyrani Braddock, David Westbrook, Robert Baker, Sarah McKinon, Michael Martin by and through their attorney of record, Michael Starr of COGHLAN CROWSON, LLP, at 1127 Judson Rd. Suite 211 P.O. Box 2665, Longview, TX 75606.

To non-party/non-parties: Brett Smith

Pursuant to Rule 200.0 of the Texas Rule of Civil Procedure, you will please take notice that a deposition of written questions has been issued for documents on non/party individual:

**Brett Smith**
**1051 CR 3212**
**Jefferson, TX 75657**

A copy (Exhibit A) is herewith served on you, and such cross-questions as may be duly served herein.

A TRUE COPY
ATTEST:
PAGE 1 OF 7 Anderson
DISTRICT CLERK

Respectfully Submitted,

**THE TESTA LAW GROUP**

BY: _____

NICHOLAS J. TESTA
SBN: 24086845 (TX.)
SBN: 37327 (LA.)
SBN: 1008096 (FL.)
121 W. AUSTIN ST.
JEFFERSON, TEXAS 75657
903.665.2000 PHONE
877.780.9052 TOLL-FREE
832.779.8470 FAX
TESTA@TESTALAWGROUP.COM
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record as listed below by e-filing, hand delivery, regular mail, by certified mail, return receipt requested, and/or by facsimile transmission, on June 9, 2021.

**Service Email: martinlawoffice@etex.net**
**Service Fax: (903) 843-2816**
Michael D. Martin, Attorney at Law
PO BOX 657
Gilmer, TX 75644

Michael Martin
Michael D. Martin, Attorney at Law
Attorney for Defendant(s)
City of Jefferson
PO BOX 657
Gilmer, TX 75644
Tel: (903) 843-3061

**Service Email: mstarr@ccfww.com**
**Service Fax: 903-753-6989**
Michael Starr

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

PAGE 2 OF 7

Coghlan Crowson, LLP.
PO Box 2665
Longview TX 75606

Michael Starr
Coghlan Crowson, LLP.
Attorney for Defendant(s)
1127 Judson Road, Suite 211
Longview TX 75601
Phone: 903-758-5543
Fax: 903-753-6989

**The Deponent:**
**Brett Smith**
**1051 CR 3212**
**Jefferson, TX 75657**

Respectfully Submitted,

**THE TESTA LAW GROUP**

BY: _____

NICHOLAS J. TESTA
SBN: 24086845 (TX.)
SBN: 37327 (LA.)
SBN: 1008096 (FL.)
121 W. AUSTIN ST.
JEFFERSON, TEXAS 75657
903.665.2000 PHONE
877.780.9052 TOLL-FREE
832.779.8470 FAX
TESTA@TESTALAWGROUP.COM
**ATTORNEY FOR PLAINTIFF**

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

PAGE 3 OF 7

**EXHIBIT A**

**DEPOSITION ON WRITTEN QUESTIONS**

1. Please state your full name.

   ANSWER: Brett Butler Smith

2. Please state by whom you are employed and your employer's business address and business phone number.

   ANSWER: Jefferson Police Department

3. What is the title of your position or job?

   ANSWER: Patrol Officer

4. Please state the date your employment with the Jefferson Police Department began.

   ANSWER: January 2018 2018

5. At the time of taking this deposition are you currently employed by the Jefferson Police Department?

   ANSWER: yes I am

6. To the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts made between the dates of January 1, 2020 to June 13, 2020 generate controversy for the Jefferson Police Department prior to the June 17, 2020 Notice of City Council Meeting of the City Council Special Session to be held on or around June 22, 2020?

   ANSWER: It did not Create a difficult working Even Enviroment, nor did it create Controversy, to my Knowledge within the department.

A TRUE COPY
ATTEST:
Susan PAGE 4 OF 7
DISTRICT CLERK

7. To the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts created between the dates of January 1, 2020 to June 13, 2020 in *anyway* impeded the departmental operations of the Jefferson Police Department? If yes, please explain.

ANSWER: No, It did not.

8. To the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts created between the dates of January 1, 2020 to June 13, 2020 in *anyway* imped your ability perform your duties as a police officer with the Jefferson Police Department? If yes, please explain.

ANSWER: No, it did not.

9. To the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts between the dates of January 1, 2020 to June 13, 2020 impact working relationships that are necessary for the proper functioning of the Jefferson Police Department among officer colleagues or outside third-party vendors? If yes, please explain.

ANSWER: No, it did not

10. To the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts between the dates of January 1, 2020 to June 13, 2020 impact your working relationships that are necessary for the proper functioning of the Jefferson Police Department among officer colleagues or community members? If yes, please explain.

ANSWER: No, Working relationship between myself and Community members were not impacted.

11. Based on your position with the Jefferson Police Department, to the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts between the dates of January 1, 2020 to June 13, 202 negatively impact or negatively impair working relationships among Jefferson Police Department officers and/or staff and/or members of the community that you come into contact with? If yes, please explain.

ANSWER: No, my personal work environment was not impaired.

12. To the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts between the dates of January 1, 2020 to June 13, 2020 generate disruption within the Jefferson Police Department? If yes, please explain.

ANSWER: To my Knowledge, no. If so, it was not made aware to me.

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK
PAGE 8 OF 7

13. To the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts between the dates of January 1, 2020 to June 13, 2020 create disharmonious relationships in the Jefferson Police Department? If yes, please explain.

ANSWER: *No, to my knowledge, work relationships were not impaired*

14. To the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts between the dates of January 1, 2020 to June 13, 2020 make you personally lose confidence in the Jefferson Police Department, which is required of you to perform your job duties? If yes, please explain.

ANSWER: *No, I did not lose faith in the Jefferson Police department. I did, however, lose faith that City Council held the best interest for the departme*

15. Based on your position with the Jefferson Police Department as an officer and working with citizens of Jefferson on a day to day basis − to the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts between the dates of January 1, 2020 to June 13, 2020 cause an interference with the Jefferson Police Department or interference with officer responsibilities? If yes, please explain.

ANSWER: *No, relationship only worsened after Carroll was removed.*

16. During your patrols and calls did you ever face community strife due to hostilities aimed at the Police Department due to Jason Carrol's Facebook posts between the dates of January 1, 2020 to June 13, 2020? If yes, please explain.

ANSWER: *No, I encountered Numerous Individuals who expressed apathy & grief at Carroll's removal*

17. Based on your position as an officer with the Jefferson Police Department − to the best of your knowledge, belief, and recollection did Jason Carrol's Facebook posts between the dates of January 1, 2020 to June 13, 2020 negatively impact the department in fulfilling public responsibilities and duties? If yes, please explain.

ANSWER: *No, I duties were not negatively Impacted.*

SIGNED:

**OFFICER, BRETT SMITH**

I, *Cristi Huntington*, a Notary Public in and for the State do hereby certify that the foregoing answers of the witness were made by the said witness and

A TRUE COPY
ATTEST.
Susan Anderson PAGE 4 OF 7
DISTRICT CLERK

sworn to and subscribed before me.  The records attached hereto are exact duplicates of the

original records.

GIVEN UNDER MY HAND AND SEAL OF OFFICER on this the _16_ day of
_____June_____, 2021.

CRISTI HUNTINGTON
NOTARY PUBLIC STATE OF TEXAS
MY COMM. EXP. 01/21/24
NOTARY ID 594566-8

Notary Public in and for The State of Texas

CAUSE NO. 2000094

| | | |
|---|---|---|
| JASON CARROLL, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF JEFFERSON, VICTOR PEROT, | § | |
| Individually and in official capacity, | § | |
| JIM FINSTROM, individually and in official | § | |
| capacity, TYRANI BRADDOCK, | § | |
| individually and in official capacity, | § | |
| DAVID WESTBROOK, individually and | § | |
| In official capacity, ROBERT BAKER, | § | |
| Individually and in official capacity, | § | |
| SARAH MCKINNON, individually and in | § | |
| Official capacity, MICHAEL MARTIN, | § | |
| Individually and in official capacity, | § | |
| | § | |
| Defendants. | § | MARION COUNTY, TEXAS |

## NOTICE OF DELIVERY

Re:     Brett Butler Smith, 1051 CR 3212, Jefferson, Texas 75657 (Deposition Upon Written Questions)

I, Melanie Smith, a Notary Public in and for the State of Texas do hereby certify that the answers to the Written Questions are a true record of the information provided to me by the witness:

1.      That this Deposition by Written Questions of Brett Butler Smith is a true and exact duplicate given by the witness after being duly sworn by a Notary Public;

2.      That the transcript is a true record of the testimony given by the witness;

3.      That $115.00 is the charge for the preparation of the completed Deposition by Written Questions charged to Attorney for Plaintiff, Nicholas J. Testa, TBA #24086845;

4.      That the deposition transcript was submitted on June 14, 2021, to the witness for examination, signature and return to the officer by a specified date;

A TRUE COPY
ATTEST:
*Susan Anderson*
DISTRICT CLERK

5. That changes, if any made by the witness, in the transcript and otherwise are attached thereto or incorporated therein;

6. That the witness returned the transcript;

7. That the original Deposition by Written Questions was delivered to the attorney or party who noticed the first written questions for safekeeping and use at trial;

8. That pursuant to information made a part of the records at the time said testimony was taken, the following includes all parties of record:

**Nicholas J. Testa, Attorneys for Plaintiff**

**Mike Martin and Michael Starr, Attorneys for Defendants**

9. A copy of this Notice of Delivery was served on all parties shown herein.

GIVEN UNDER MY HAND AND SEAL OF OFFICE ON THIS THE 29th day of JUNE , 2021 .

MELANIE S. SMITH
Notary Public, State of Texas
Comm. Expires 04-24-2025
Notary ID 131100469

Melanie S. Smith, Notary Public, State of Texas
2208 Judson Road, Suite 104
Longview, Texas 75605
(903)758-2183  (877)683-2889 FAX

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

```
 1      A.  I'm -- Tyrani, she's a citizen of Jefferson.  I

 2   guess Finstrom, Westbrook.  None of the complaints that

 3   were filed against me were from the citizens of

 4   Jefferson.

 5      Q.  How do you know that?

 6              MR. TESTA:  Form.

 7      A.  Once my lawyer got the complaints and we saw who

 8   it's from, then we found out one is Dallas, Marshall,

 9   and then out in the county somewhere.

10      Q.  (By Mr. Starr)  So you never saw the complaints

11   until they were produced in this lawsuit is your

12   testimony?

13      A.  Correct.

14      Q.  All right.

15      A.  Because if I would have, then I could have

16   told -- the one that lives out in the county had

17   numerous run-ins with the law.

18              The one in Marshall, I almost worked an

19   animal cruelty case on until she actually came and got

20   her dog that she abandoned in Jefferson.

21              And the guy from Dallas, I have no idea who

22   he is.

23      Q.  Victor Perot testified in his deposition that he

24   gave you those three emails before this meeting on June

25   22nd, 2020.
```

A TRUE COPY
ATTEST:
Susan Anderson

Case 2:21-cv-00308-RSP Document 42 Filed 10/02/21 Page 55 of 72 PageID #: 853

```
 1    procedures of the Jefferson Employee Handbook?

 2       A.  They -- they determine it.  They make it.

 3       Q.  So if they determine this when they make the

 4    employee handbook, then they should know what's in it?

 5       A.  Yes.

 6            MR. STARR:  Objection, leading.

 7       Q.  (By Mr. Testa)  And that would be negligence if

 8    they don't know what's in their own handbook?

 9            MR. STARR:  Objection, leading.

10       A.  Yes.

11            MR. STARR:  Objection, form.

12       Q.  (By Mr. Testa)  Okay.  So -- so if you weren't to

13    follow this standard operating procedure of the

14    Jefferson Police Department, you would be subject to

15    discipline, correct?

16            MR. STARR:  Objection, leading.

17       A.  Yes.

18       Q.  (By Mr. Testa)  Okay.  And so in the past, you

19    mentioned the mayor has conducted investigations of

20    officer discipline without the chief being involved in

21    an investigation?

22       A.  In the beginning, yes.

23       Q.  Okay.  Do you know specifically when a mayor has

24    sought discipline of an officer without the chief of

25    police being involved?
```

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

```
 1      A.   The previous mayor...

 2      Q.   Are you suggesting Bubba Haggard?

 3      A.   No.

 4      Q.   Was it when you were talking about a sergeant?

 5      A.   Yes.

 6      Q.   And do you remember the officer?

 7      A.   Billy Reynolds.

 8      Q.   Is he the Dallas, Texas, officer?

 9      A.   He is now a justice of the peace in some county

10   in West Texas.

11      Q.   Okay.  And what was the mayor's contention about

12   Billy Reynolds?

13      A.   Billy Reynolds was defending the police

14   department on Facebook.

15      Q.   What was the allegation Billy Reynolds -- did he

16   do something wrong?

17      A.   Did Billy Reynolds do something wrong?

18      Q.   No.  Why was he being investigated, or why was he

19   being chastised?

20      A.   Oh, it made the mayor mad that he got on Facebook

21   and defended the city, just in general, and he told the

22   chief he wanted him disciplined.

23      Q.   So it just made the mayor mad, so he went after

24   Mr. Reynolds?

25      A.   Yes.
```

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

```
 1        Q.  Okay.  And in your case, you made some people

 2   mad, and the city council went after you?

 3               MR. STARR:  Objection, leading.

 4        A.  Yes.

 5        Q.  (By Mr. Testa)  Okay.  So if you make someone mad

 6   in Jefferson, they tend to go after you?

 7        A.  Yes.

 8               MR. STARR:  Objection, leading.

 9        A.  Yeah.

10        Q.  (By Mr. Testa)  And you felt that the city

11   council, they were going after you because they wanted

12   you gone?

13               MR. STARR:  Objection, leading.

14        A.  Yes.

15        Q.  (By Mr. Testa)  And do you think you posted

16   anything inappropriate --

17        A.  No.

18        Q.  -- on Facebook?

19               Okay.  And things you -- the issues you

20   posted on Facebook, that had nothing to do with a Black

21   Lives Matter protest, correct?

22        A.  Correct.

23               MR. STARR:  Objection, leading.

24        A.  It had nothing to do with Black Lives Matter

25   protest.  It wasn't really even a Black Lives Matter
```

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

1   reasons to terminate him, and that centered around the
2   complaints, correct?
3        A    And the fact that he had put something on
4   social media when he had -- when all city employees are
5   asked not to post on social media.
6        Q    Okay.  But they have a right to post matters
7   of public concern on social media, do they not?
8        A    I don't think they're supposed to post on
9   social media at all.
10       Q    Okay.  And that's in the employee handbook?
11       A    I don't know.  I'm just telling you what I
12  think.
13       Q    So do you agree that a government employee
14  has First Amendment rights, though?
15       A    Well, yeah.
16       Q    Okay.
17            So do you think that because of
18  Mr. Carroll's Facebook post, that's why he was asked to
19  either resign or face public termination?
20       A    That and some other complaints.
21       Q    Okay.  Complaints centered around what?
22       A    Whatever it was these people said in the
23  meeting, and I certainly can't remember what they said.
24       Q    Okay.  So do you think that because of
25  Mr. Carroll's Facebook post that brought with it

A TRUE COPY
ATTEST:
DISTRICT CLERK

1  complaints, he was asked to resign or face public
2  termination?
3       A    I'm sorry, ask me that question again.
4       Q    Do you think that because of Mr. Carroll's
5  Facebook post that brought with it complaints, that's
6  why he was asked to either resign or face public
7  termination?
8       A    I don't know.
9       Q    So he was asked to either resign or face
10 public termination, based on the complaints, correct,
11 that y'all were hearing in the open session?
12      A    Yes.
13      Q    Because that's why y'all called the meeting
14 for June 22nd, is to discuss complaints against
15 Mr. Carroll, correct?
16      A    I have to look at the agenda and see what
17 else was on there.
18           Yes.
19      Q    Okay, so add up the Facebook post and the
20 complaints.  So because of Mr. Carroll's Facebook post
21 and the complaints, that's why he was asked to either
22 resign or face public termination?
23      A    You've asked me that question before, and
24 I've said I don't -- I think so.  I don't know for
25 sure.

A TRUE COPY
ATTEST:
Susan Anderson

KAY MCKINNON - 5/5/2021

27

```
 1    about opinions on the matter, correct?
 2         A    Yes.
 3         Q    Okay.  And what was your opinion on the
 4    matter of keeping Jason or letting Jason go?
 5         A    Well, I was sort of in between keeping him
 6    and letting him -- I don't want to see anyone lose
 7    their job, but I also don't -- I think he did some
 8    things that were not appropriate.
 9         Q    "Things" being Facebook post?
10         A    Any sort of social media post.
11         Q    Okay.  So you're of the opinion that a
12    government employee should not post political things of
13    nature on their Facebook?
14         A    That is correct.
15         Q    But you do agree that they have a right to
16    post about political issues on their Facebook?
17         A    I don't think they should.
18         Q    Well, the question is do you think that
19    they're allowed to post issues on their Facebook.
20         A    Depends on who they work for and what their
21    employer's told them.
22         Q    So if a government employer told a government
23    employee, "Don't post any political issues on your
24    Facebook," that's okay?
25         A    In my opinion, yes.
```

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

LEIGH & ASSOCIATES COURT REPORTING AND VIDEO
(877) 790-3376     FAX (877) 790-3377

KAY MCKINNON – 5/5/2021

1     A     No.

2     Q     So y'all don't go into closed session and

3   discuss opinions to give yourself an observation of how

4   another person would vote?

5     A     I'm not sure how to answer that question.

6     Q     So in the closed session, Mr. Carroll was

7   given an option to either be publicly terminated or

8   resign, correct?

9     A     Right.

10    Q     Okay.  So how was it formulated that he would

11  be publicly terminated?

12    A     Because of discussions between the council

13  members.

14    Q     Okay.  So, obviously, if he was given a

15  chance to resign, there was enough discussion to see

16  what the vote tabulation would be, correct?

17    A     Yes.

18    Q     Okay.  So that means, essentially, he was

19  given the option in the closed session to either resign

20  or face public termination, so y'all knew what the vote

21  would have been come open session, correct?

22    A     We could assume what the vote would have been

23  from the --

24    Q     Then why did you give him an option to

25  resign?

A TRUE COPY
ATTEST:
Susan Anderson

LEIGH & ASSOCIATES COURT REPORTING AND VIDEO
(877) 790-3376     FAX (877) 790-3377

1    A    Because we felt like it was the fair thing to
2  do.
3      Q    Why is it fair to give someone only a few
4  minutes to decide their livelihood?
5      A    I don't know.
6      Q    Okay.
7           So Mr. Carroll came into the meeting,
8  and y'all had already discussed that he would possibly
9  be terminated in open session?
10     A    No.
11     Q    So he was asked to either publicly be
12 terminated or resign in the closed session, correct?
13     A    In the closed session.
14     Q    Okay.  So there was some type -- y'all must
15 have done something to come to a conclusion that "we
16 should give him a chance to resign," correct?
17     A    There was a lot of discussion in the closed
18 session, yes; I just can't remember what everyone said.
19     Q    But there would be no reason to offer him a
20 chance to resign if he could still pass a vote of
21 non-termination, correct?
22     A    I don't know.
23     Q    You don't give someone a chance to resign if
24 you're not going to fire them, do you?
25     A    I wouldn't think so.

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

1    narcotics; and then he left.  And then when he came
2    back, I think when he was a police officer, he worked
3    narcotics; but when he became police chief, he was not
4    doing that --
5         Q    Do you know --
6         A    -- as a -- the majority of his work.
7         Q    Okay.
8              So do you know what he was mostly doing
9    when he became police chief?
10        A    Administration.
11        Q    Oh, okay.
12             So the meeting of June 22, 2020, was to
13   discuss complaints against Mr. Carroll?
14        A    Yes.
15        Q    Okay.
16        A    And other agenda items.
17        Q    But the closed or executive session was held,
18   with regards to Section 541.074, to discuss complaints
19   against Mr. Carroll?
20        A    That's correct.
21        Q    When you're in a closed session, y'all have
22   files.  Are those files of documents compiled prior to
23   the closed session or the open session?
24        A    Some.
25        Q    And I'm sure Ms. Hines makes the files for

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

1  phone has blown up."  Did y'all ever ask her who was
2  calling her with questions and concerns and complaints?
3      A      Never did ask her, no, sir.
4      Q      Did she talk about -- well.
5             Do you remember how she talked about, in
6  the closed session, how her phone has been ringing off
7  the hook with complaints?
8      A      I don't remember that specifically, no.  She
9  certainly could have, but I don't remember it.
10     Q      She says, "I did my homework, tried to find
11 out as much as possible regarding how to approach the
12 situation legally."
13            What was the situation she was referring
14 to?
15     A      Trying to have a -- trying to have a public
16 meeting, an emergency public meeting.
17     Q      Did she talk to you about -- about how to
18 have a meeting?
19     A      She did.
20     Q      Did she call you on the phone?
21     A      Yes, she did.
22     Q      Did she text you?
23     A      No.  We spoke on the phone.
24     Q      Okay.
25            What city council members do you text?

A TRUE COPY
ATTEST:
Susan Anderson
DISTRICT CLERK

1    A    I don't text any of my city -- or any of the
2  city council members.
3    Q    Okay.
4         So she was going to find out how to hold
5  an emergency meeting, and that's what she told you?
6    A    She asked me if we could, and I told her that
7  it did not -- it -- it was not an emergency.  She felt
8  it was.  I told her that, no, it's not an emergency.
9  We can handle this at our next regular council meeting
10 or a next called council meeting.
11   Q    And then what did she say in reply?
12   A    She understood.  She was still hoping that we
13 could; but after I explained to her, she understood
14 that and was fine.
15   Q    So you told her, Let's do it at the next
16 regularly scheduled council meeting?
17   A    Yes, sir.
18   Q    But didn't she want to push on more and get a
19 special meeting?
20   A    Not after she and I spoke, no.
21   Q    So she must have spoke to someone else about
22 how to get a special meeting?
23   A    She may have.  I have no idea.
24   Q    So she called you.  And then she goes on to
25 say -- I'm on paragraph 4.

A TRUE COPY
ATTEST:
Susan Anderson

```
 1    you respond to them truthfully?
 2         A    Sure I would.
 3         Q    Thank you, sir.
 4              So before you answer this question, I'm
 5    not here to harp on you; I'm not here to catch you in a
 6    lie.  I know you voted to keep Mr. Carroll, and I know
 7    Ms. McKinnon did, as well.
 8              MR. STARR:  Objection, form; sidebar.
 9         Q    (BY MR. TESTA)  Did you vote to keep
10    Mr. Carroll?
11         A    I wanted to keep Mr. Carroll.
12         Q    Did Ms. McKinnon vote to keep Ms. Carroll --
13    I mean to keep Mr. Carroll?
14         A    She wanted to keep Mr. Carroll.
15         Q    Okay.
16              So we're going to listen to this first,
17    and I do not want you to answer it.
18              (Media played.)
19         Q    (BY MR. TESTA)  So are you aware that the
20    defense of Jefferson is that y'all terminated Jason
21    based on a vote of loss of confidence?
22              MR. STARR:  Objection, form.
23         A    Loss of confidence was discussed in our
24    meeting.
25         Q    (BY MR. TESTA)  So Ms. McKinnon is wrong.
```

A TRUE COPY
ATTEST:

DISTRICT CLERK

VICTOR PEROT - 4/30/2021

1       A       Ms. McKinnon is wrong.

2       Q       Okay.  So earlier you said Ms. McKinnon is an

3  honest and truthful person.

4       A       Yes, she is.

5       Q       But she was not telling the truth there.

6       A       She wasn't -- she did not say that, but other

7  council members did.

8       Q       So during the closed session, y'all brought

9  up loss of confidence.

10      A       There were -- there was a council member or

11  two that firmly agreed on that, yes.

12      Q       Okay.  And loss of confidence would be Texas

13  Local Code -- Texas local code 22.077(b); is that

14  correct?

15      A       I don't know.

16      Q       I'll show it to you.

17      A       If you say so.

18      Q       No, it's okay.  If you don't know, just say

19  you don't know.

20      A       Okay.  I don't know.

21      Q       Speaking of which, did anyone tell you to say

22  "I don't know" or "I'm not sure" today?

23                   MR. STARR:  Don't answer that.

24                   You're asking him what his lawyers have

25  told him.  That invades the attorney-client privilege,

A TRUE COPY
ATTEST:
_____ Anderson
DISTRICT CLERK

Case 2:21-cv-00342SPF Document 42 Filed 10/22/21 Page 68 of 72 PageID #2966

128

```
 1   being a police chief, correct?  That was --
 2        A    No.  It was his opportunity to go make a
 3   phone call and talk to whomever he wanted to.  I mean,
 4   it was -- yes, it was his -- it was his choice of
 5   what -- of what he wanted to do.
 6        Q    Okay.
 7        A    He was given the choice.  We -- you know.  I
 8   knew we did not have the votes, but we didn't take a
 9   vote inside of that meeting.  From the discussion that
10   we had, where I knew what everybody's thinking was,
11   common sense, I told him, I don't think that we're
12   going to have the votes when we come out into open
13   session --
14        Q    Okay.
15        A    -- to keep you on board.
16             So my heart, Do you -- would -- is why I
17   wanted to know whether he would prefer to resign, which
18   I figured he would, or, Do you want us to terminate
19   you?
20        Q    Okay.
21        A    So -- I mean, that -- that came from me
22   asking Mike whether or not we could propose that to him
23   in that meeting.
24        Q    Okay.  And so -- there you go.  So it wasn't
25   your idea to give him an option to resign.
```

VICTOR PEROT - 4/30/2021

```
 1        A     It was absolutely 100 percent my idea.

 2        Q     The idea originated from you?

 3        A     Yeah.  I asked that man down there whether or

 4   not I could -- after I asked the city council, Would

 5   you be in favor of us allowing him, which was my idea,

 6   of asking the city council, Would you be in favor of

 7   allowing him to resign versus us terminating him, and

 8   then turned to Mike and asked him if that was

 9   permissible.

10        Q     Okay.  And so --

11        A     And --

12        Q     -- when Mr. Carroll was where you said he

13   stood, he was there to be confronted about the Facebook

14   post, correct?

15        A     No.  He was more -- given the -- the

16   knowledge that I didn't have enough -- that I felt that

17   we didn't have enough votes --

18        Q     Well, I'm talking --

19        A     -- to give him the oppor -- I mean, yeah, I

20   mean, we talked to him about, yes, about, you know --

21        Q     So he came in the room, and you were the one

22   that told him to come back in the room.

23        A     Yes.

24        Q     Okay.  And y'all pulled him in -- let's back

25   up.
```

A TRUE COPY
ATTEST:

_Susan Anderson_

DISTRICT CLERK

LEIGH & ASSOCIATES COURT REPORTING AND VIDEO
(877) 790-3376      FAX (877) 790-3377

1　confidence in this session, because it wasn't you, was

2　it?

3　　　　A　　No, it wasn't me.  It....

4　　　　Q　　You just can't remem --

5　　　　A　　I don't remember who, but it -- it was -- you

6　know, I can remember that it was brought up.  I

7　don't -- I can't remember which one said those

8　particular words, but --

9　　　　Q　　So it was one person?

10　　　　A　　You know, actually, all three of the -- of

11　the down vote -- what I call the down vote, the no

12　vote, all three of those people pretty much said the

13　same thing --

14　　　　Q　　Okay.

15　　　　A　　-- or agreed with each other and/or expounded

16　upon mine.

17　　　　Q　　Okay.  And so they specifically talked about

18　loss of confidence in regards to the Jefferson

19　ordinance.

20　　　　A　　Those exact words were used.

21　　　　Q　　Okay.

22　　　　　　　　And was there any discussion of the vote

23　needed to terminate Jason Carroll?

24　　　　A　　No.

25　　　　Q　　Okay.  So they talked about loss of

A TRUE COPY
ATTEST:
DISTRICT CLERK

VICTOR PEROT - 4/30/2021

1     Q    If you -- you and Jason talked on the phone

2  on the day, to come get a copy of those complaints?

3     A    I don't know if he came the very day that we

4  talked about it.  Probably did, but -- you know, it

5  could have been a day or two after when we had talked

6  about.  I'm sure he came and got them the day we

7  talked.

8     Q    But y'all had a phone conversation, and he

9  asked for the complaints, right?

10     A    We had a phone conversation.

11     Q    Okay.

12           So, essentially, from the closed

13  session, there was no straw-poll vote taken?

14     A    No straw vote taken, no, sir.

15     Q    And what is a straw poll to you?

16     A    Straw poll would be going around the room and

17  saying how are you going to vote, how are you going to

18  vote, how are you going to vote.

19     Q    Okay.  And that did not occur?

20     A    That did not occur.

21     Q    So, essentially, the city council, they were

22  voting on the loss of confidence, which required a

23  two-thirds vote, correct?

24     A    Yes.

25     Q    Loss of confidence, correct?

A TRUE COPY
ATTEST:
*Susan Anderson*
DISTRICT CLERK

LEIGH & ASSOCIATES COURT REPORTING AND VIDEO
(877) 790-3376    FAX (877) 790-3377

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Nicholas Testa on behalf of Nicholas Testa
Bar No. 24086845
testa@testalawgroup.com
Envelope ID: 57706664
Status as of 9/29/2021 12:44 PM CST

Associated Case Party: JASONCARROLL

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nicholas Testa | | testa@testalawgroup.com | 9/29/2021 11:51:47 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stacy Cook | | stacycook@ccfww.com | 9/29/2021 11:51:47 AM | SENT |
| Michael DMartin | | martinlawoffice@etex.net | 9/29/2021 11:51:47 AM | SENT |
| Michael E.Starr | | mstarr@ccfww.com | 9/29/2021 11:51:47 AM | SENT |

A CERTIFIED COPY
ATTEST: SUSAN ANDERSON
DISTRICT CLERK, MARION COUNTY, TEXAS
October 15 20 21
BY Billie J. Westbrook
DEPUTY